# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>ZEABORN SHIP MANAGEMENT (SINGAPORE) PTE. LTD. (1), ALEXANDER PARRENO (2), and CONSTANCIO ESTUYE (3),<br><br>　　　　　Defendants. | Case No. 23cr1661-JO<br><br>I N F O R M A T I O N<br><br>33 U.S.C. § 1908(a) and<br>33 C.F.R. § 151.25<br>Failure to Maintain an Accurate Oil Record Book<br>(Felony)<br><br>33 U.S.C. § 1908(a) and<br>33 C.F.R. § 151.55<br>Failure to Maintain an Accurate Garbage Record Book<br>(Felony)<br><br>18 U.S.C. § 2<br>Aiding and Abetting |

The United States Attorney charges:

At all times material to this Information,

　　A.　THE DEFENDANTS

　　1.　Defendant ZEABORN SHIP MANAGEMENT (SINGAPORE) PTE. LTD. ("ZEABORN"), was a company domiciled in Singapore with offices at 1 Maritime Square, #11-03 Harbour Front Centre, Singapore 099253. At all relevant times, ZEABORN served as the operator of the commercial vessel Star Maia.

　　2.　Defendant ALEXANDER PARRENO was a Filipino citizen and licensed to serve as the "Master" onboard commercial vessels. PARRENO was an agent and employee of defendant ZEABORN, the corporate operator

of the commercial vessel Star Maia, and acted within the scope of his agency and employment for the benefit of defendant ZEABORN when serving as the Master of the Star Maia.

3. Defendant CONSTANCIO ESTUYE was a Filipino citizen and licensed to serve as the "Chief Engineer" onboard commercial vessels. ESTUYE was an agent and employee of defendant ZEABORN, the corporate operator of the commercial vessel Star Maia, and acted within the scope of his agency and employment for the benefit of defendant ZEABORN when serving as the Chief Engineer of the Star Maia.

B. THE VESSEL

1. The commercial vessel Star Maia (International Maritime Organization Number 9189940) was a 29,668 gross ton vessel, registered and operated under the flag state administration of Isle of Man. The Star Maia was engaged in international commercial maritime operations transporting cargo to and from San Diego, California, and elsewhere. The Star Maia had a Captain, also known as the vessel's "Master," (defendant ALEXANDER PARRENO) who was the person in overall charge of the vessel. The Master was responsible for, among other things, garbage discharges from the vessel and overall management of the vessel's garbage waste management plan. In addition to Captain ALEXANDER PARRENO, the Star Maia had a "Chief Officer," a "Second Officer," and a "Third Officer," who assisted Captain ALEXANDER PARRENO. The Star Maia also had a "Chief Engineer" (defendant CONSTANCIO ESTUYE) assigned as the person in charge of the vessel's engine room, as well as a "Second Engineer," a "Third Engineer," and several others who assisted Chief Engineer CONSTANCIO ESTUYE. The crew members working in the engine room were responsible for, among other things, shipboard control of machinery space waste, to include oily bilge water. In all, there were 20 crew members working

*Information*  2

1  onboard the Star Maia, and all were agents or employees of defendant
2  ZEABORN, the corporate operator of the Star Maia, acting within the
3  scope of their agency or employment for the benefit of defendant ZEABORN
4  when serving onboard the Star Maia.
5      C.   LEGAL FRAMEWORK
6           1.   The United States is part of an international regime that
7  regulates the discharges of oil and garbage from vessels at sea known
8  as the International Convention for the Prevention of Pollution from
9  Ships, as modified by the Protocol of 1978 (MARPOL). MARPOL was enacted
10 into United States law by the Act to Prevent Pollution from Ships (APPS).
11 33 U.S.C. § 1901, et seq. APPS and its regulations apply to foreign-
12 flagged vessels like the Star Maia while they are operating in United
13 States waters or at a port or terminal under the jurisdiction of the
14 United States. 33 C.F.R. § 151.09(a)(5).
15          2.   To facilitate enforcement, the U.S. Coast Guard (USCG) is
16 empowered under 14 U.S.C. § 522(a) to board vessels and conduct
17 inspections and investigations of potential violations of international
18 and United States law, including MARPOL and APPS. The USCG is
19 specifically authorized to examine the vessel and vessel's required
20 record books to determine, among other things, whether the vessel has
21 operable pollution prevention equipment and appropriate operating
22 procedures; whether it poses any danger to United States' ports and
23 waters; and whether the vessel has discharged any garbage, oil, or oily
24 mixture in violation of MARPOL, APPS, or any applicable federal
25 regulations. 33 C.F.R. §§ 151.23(a)(3) and (c) and 151.61.
26          3.   The operations of large marine vessels like the Star Maia
27 generate oily bilge water created when water mixes in the bottom of the
28 vessel, known as the "bilges," with oil that has leaked and dripped from

Information                            3

the machinery and the lubrication and fuel system for the engines.  These "oily mixtures" are often referred to as "bilge waste," "bilge slops," and "slops from bilges," and are collected, stored, and processed to separate the water from the oil and other wastes using a pollution prevention control device known as an Oily Water Separator ("OWS") and an oil-sensing device known as an Oil Content Monitor ("OCM").

4.   Pursuant to MARPOL, bilge waste may only be discharged overboard after passing through an OWS to ensure that it contains 15 parts per million ("ppm") or less of oil, as measured by the OCM.  If the OCM detects an oil content of greater than 15 ppm in the effluent, it sounds an alarm, and shuts down the pumps and/or diverts flow back to the bilges or bilge holding tanks in order to prevent the discharge of bilge waste with greater than 15 ppm of oil overboard.

5.   Consistent with the requirements contained in MARPOL Annex V, APPS regulations require that the master or person in charge of each vessel of more than 400 gross tons maintain a record known as a Garbage Record Book ("GRB") in which the discharge overboard and discharge to shore of garbage must be recorded, including the date and time, volume and, if discharged at sea, the latitude and longitude. 33 C.F.R. § 151.55(a) and (b). Entries in the GRB must be made at the time of the operation, certified as correct by the master or person in charge of the ship, maintained on the ship for two years following the operation, and made available for inspection by the U.S. Coast Guard. 33 C.F.R. § 151.55(f); MARPOL, Annex V Regulation 10 and Appendix II (Form of GRB).

6.   MARPOL and APPS regulations also require that vessels with a weight of more than 400 gross tons, such as the Star Maia, maintain a record known as an Oil Record Book ("ORB"). The ORB must fully record, on a tank-to-tank basis, all operations involving the discharge

*Information* 4

1  overboard and disposal of bilge water that has accumulated in machinery
2  spaces, and thus may be contaminated with oil. 33 C.F.R. § 151.25(d) and
3  (h); MARPOL, Annex I Regulation 17 and Appendix III (Form of ORB). The
4  ORB must also record internal transfers of bilge water to holding tanks
5  prior to it being discharged overboard or being otherwise disposed of.
6      D.    THE CRIMINAL CHARGES
7                          Count 1
8      Act to Prevent Pollution from Ships, 33 U.S.C. § 1908(a);
9              Aiding and Abetting, 18 U.S.C. § 2
10
11      1.    Sections A through C of this Information are specifically
12  incorporated and re-alleged herein.
13      2.    On or about October 14, 2022, within the navigable waters,
14  internal waters, and ports of the United States in the Southern District
15  of California, defendant ZEABORN, acting through its agents and
16  employees, and defendant CONSTANCIO ESTUYE, did knowingly fail to
17  maintain an accurate Oil Record Book for the Star Maia. Specifically,
18  defendant ZEABORN and defendant CONSTANCIO ESTUYE, maintained and caused
19  to be maintained an Oil Record Book that: (1) failed to record the
20  discharges of oily bilge water from the Bilge Holding Tank and the Clean
21  Bilge Tank into the ocean; and (2) erroneously recorded that oily bilge
22  water had been discharged using the OWS when, in fact, the OWS had not
23  been used. All in violation of Title 33, United States Code, Section
24  1908(a); Title 33, Code of Federal Regulations, Section 151.25; and
25  Title 18 United States Code, Section 2.
26  //
27  //
28  //

## Count 2

Act to Prevent Pollution from Ships, 33 U.S.C. § 1908(a)

1. Sections A through C of this Information are specifically incorporated and re-alleged herein.

2. On or about October 14, 2022, within the navigable waters, internal waters, and ports of the United States in the Southern District of California, defendant ZEABORN, acting through its agents and employees, and defendant ALEXANDER PARRENO, did knowingly fail to maintain an accurate Garbage Record Book for the Star Maia, that is, defendant ZEABORN and defendant ALEXANDER PARRENO maintained a Garbage Record Book that: 1) failed to record the burning of garbage in barrels on the vessel's deck; and 2) failed to record the disposal of burned garbage and barrels into the ocean; all in violation of Title 33, United States Code, Section 1908(a), and Title 33, Code of Federal Regulations, Section 151.55.

RANDY S. GROSSMAN
United States Attorney

DATED: July 21, 2023

STEPHEN DA PONTE
Special Assistant U.S. Attorney

Information

6